UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE EDWARD BARICH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF COTATI, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-00350-VC<br><br>**ORDER GRANTING BARICH'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 29, 30, 34 |

Barich's motion for partial summary judgment is granted. The defendants' cross-motion for summary judgment is denied.

**I**

Barich alleges that Chief Parish violated his First Amendment rights by threatening to arrest him if he recorded Chief Parish. Barich's motion for summary judgment on this claim is granted. The defendants' cross-motion for summary judgment on this claim is denied.

In his deposition testimony, Chief Parish explained that he was uniformed, armed, and present in his capacity as Chief of Police at a Cotati City Council meeting on April 22, 2014. After the meeting was over, Chief Parish confronted Barich outside the city council chamber. In his own declaration, Chief Parish recounted what happened next: "I told [Barich] that if he were recording me—and thereby lying to me by telling me that he was not—that I would arrest him." In his deposition testimony, Chief Parish explained that he "wanted to make sure [he] wasn't being recorded."

From these undisputed facts, it is clear that Chief Parish violated Barich's First Amendment rights. To succeed on a First Amendment claim, a plaintiff must prove that a state actor did something that "would chill . . . a person of ordinary firmness from future First

Amendment activities," and that the state actor's conduct was motivated (at least in part) by a desire to chill the First Amendment activity. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999); *see also Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). Filming a police officer on duty is protected First Amendment activity. And threatening to arrest someone "is enough to chill First Amendment rights." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004).

It does not matter that Barich was not, in fact, recording this particular conversation with Chief Parish. As Chief Parish knew, Barich frequently records or seeks to record public officials in Cotati. Chief Parish's threat was therefore significant from a First Amendment standpoint regardless of whether Barich sought to exercise his right during this encounter with Chief Parish.

The defendants contend that Barich was never actually "chilled" because he has recorded other Cotati public officials since his interaction with Chief Parish. But "[b]ecause it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, [Barich] does not have to demonstrate that his speech was actually inhibited or suppressed." *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005). The chilling effect of a defendant's conduct is measured objectively, not subjectively: all that matters is whether a defendant's conduct would chill a person of ordinary firmness. No reasonable trier of fact could doubt that a person of ordinary firmness would be deterred by the threat of arrest. *See Hodgkins*, 355 F.3d at 1056.

Nor is Chief Parish entitled to qualified immunity. It has been clear in this circuit since at least 1995 that the First Amendment protects a "right to film matters of public interest." *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). In other words, "the First Amendment protects the filming of government officials in public spaces." *Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) (citing *Fordyce*, 55 F.3d at 439); *see also Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."). Restrictions on recording police officers in public places "interfere[] with the gathering and dissemination of information about government officials performing their duties in public." *Am.*

2

1   *Civil Liberties Union v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012).  Thus, "under the law of this

2   circuit there is and was" at the time of Chief Parish's conduct "a clearly established right to record

3   police officers carrying out their official duties."  *Crago v. Leonard*, No. 13-cv-531, 2014 WL

4   3849954, at *4 (E.D. Cal. Aug. 5, 2014), *report and recommendation adopted*, 2014 WL 4435954

5   (E.D. Cal. Sept. 9, 2014); *see also Adkins v. Limtiaco*, 537. F. App'x 721, 722 (9th Cir. 2013)

6   (unpublished) (recognizing a clearly established right to photograph police officers in a public

7   place).[1]

8   Finally, the City of Cotati is liable for Chief Parish's constitutional violation under *Monell*

9   *v. Department of Social Services*, 436 U.S. 658 (1978).  "[A] local government may be held liable

10  under § 1983 when the individual who committed the constitutional tort was an official with final

11  policy-making authority."  *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010).

12  The defendants do not dispute that Chief Parish is an official with final policy-making authority

13  for the City of Cotati with respect to law enforcement matters, and indeed it appears that he is.

14  "[W]hether a particular official has final policymaking authority is a question of state law."  *Jett v.*

15  *Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  Under California law, "[t]he police

16  department of a city is under the control of the chief of police."  Cal. Gov't Code § 38630(a); *see*

17  *also Collins v. City of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988).

18  In sum, at the time of Chief Parish's conduct, Barich had a clearly established First

19  Amendment right to record a police officer on public property.  Nevertheless, Chief Parish told

20  Barich that, if he exercised his First Amendment right, he would be arrested.  Chief Parish made

21  this threat to deter Barich from recording him, and a reasonable person of ordinary firmness would

22  in fact be deterred by this threat of arrest.  For these reasons, Barich is entitled to summary

23  judgment against Chief Parish on this claim.  And because Chief Parish is a policymaker for the

24  City of Cotati for these purposes, Barich is also entitled to summary judgment against the City.

---

[1] "In determining whether [Barich's] rights in this case were clearly established, and whether a reasonable person would have known his or her actions violated these rights, we may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent."  *Prison Legal News v. Lehman*, 397 F.3d 692, 701-02 (9th Cir. 2005).

## II

Barich also alleges that Chief Parish violated his First Amendment rights by threatening to arrest him for calling a public official (a planning commissioner for the City of Cotati) a "liar." The defendants' motion for summary judgment on this claim is denied. (Barich has not cross-moved for summary judgment on this issue.)

On this claim, many facts are disputed. According to Barich, he turned toward the planning commissioner as he was leaving the city council chamber, and – from a considerable distance away – simply called the planning commissioner a "liar." In this account, Barich was peaceful and nonthreatening; he did not raise his voice or his hands. According to witnesses for the defendants, Barich "towered" over the planning commissioner and "bent down so that his face was just a few feet from" the planning commissioner's. In this account, Barich's "face was red and he yelled with such vehemence and ferocity that [the planning commissioner] feared for [his] safety"; Barich "gesture[d] with his hands" in a way that suggested that "he was either going to hit somebody or that violence would otherwise erupt."

This factual dispute precludes summary judgment. Because it is undisputed that Barich's exchange with the planning commissioner occurred after the city council meeting was over, cases concerning a city's authority to manage its governmental meetings are not relevant. *Cf. Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010) (en banc); *Kindt v. Santa Monica Rental Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995); *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990). Instead, the question is whether Barich's speech fell outside the First Amendment because it constituted "fighting words," *see United States v. Poocha*, 259 F.3d 1077, 1080-81 (9th Cir. 2001), or a "true threat," *see United States v. Szabo*, 760 F.3d 997, 1002-03 (9th Cir. 2014). If a jury were to credit the defendants' version of events, it could reasonably find that either of these two conditions was satisfied. If a jury were to credit Barich's version of events, it could not.

For similar reasons, Chief Parish is not entitled to qualified immunity. "This is the type of qualified immunity [issue] where a factual dispute that precludes entry of summary judgment on the underlying constitutional question also precludes a finding of qualified immunity at the summary judgment stage." *Smith v. Mack*, 2015 WL 3830662, at \*4 (N.D. Cal. June 19, 2015);

4

*see also Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014) (per curiam).  If the facts are as Barich contends, it would have been obvious to every reasonable officer that he could not threaten to arrest Barich for what he had done.  "Police officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013).

**IT IS SO ORDERED.**

Dated: October 20, 2015

_____
VINCE CHHABRIA
United States District Judge